UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TERRANCE WOODS,**

    Plaintiff,

    v.                                                                                         Case No. 20-CV-940-SCD

**CITY OF MILWAUKEE,**
**KURT ZIARNIK,** and
**EDUARDO GARCIA,**

    Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        In November 2018, two Milwaukee police officers arrested Terrance Woods because he was wanted for an October 2016 burglary. Woods' fingerprints had been recovered from inside the burglarized residence, but the arresting officers did not know that information; they arrested Woods solely based on a record check that revealed he was a suspect in the burglary. After Woods was released from custody without any criminal charges filed against him, he filed a civil-rights complaint under 42 U.S.C. § 1983 against the arresting officers for false arrest and racial discrimination. Woods also claims in his complaint that his alleged injuries resulted from an official policy or practice of the City of Milwaukee.

        The defendants are entitled to summary judgment on all three of Woods' claims. First, because the arresting officers had probable cause to arrest Woods, they are not liable under a false-arrest theory; and, even in the absence of probable cause, the officers acted within the scope of their immunity. Second, based on the evidence submitted, no reasonable jury could return a verdict in Woods' favor on his racial-discrimination claim. Finally, because the

arresting officers did not violate Woods' constitutional rights, the City is not liable either; and, even if the arresting officers had committed a constitutional violation, the City still would not be liable because Woods fails to present evidence that the officers acted according to an express or de facto municipal policy.

## BACKGROUND

In October 2016, Shamia Washington reported to Milwaukee police that her residence had been burglarized. *See* ECF No. 30-1 at 2; *see also* ECF No. 31 ¶ 15. According to Washington, someone broke in through her bathroom window and took several items, including a laptop, two watches, and a television set. Washington reported that the burglar also attempted to steal a different television, but the burglar was unable to remove it from the living room wall. A Milwaukee police officer investigated the burglary scene and recovered fingerprints from the living room television that matched Terrance R. Woods. Washington told police that Woods did not have consent to enter her residence or touch her property.

On November 7, 2018, Milwaukee police officers Kurt Ziarnik and Eduardo Garcia arrested Woods following a traffic stop. *See* ECF No. 31. While on patrol, the officers observed a stopped vehicle they believed had excessively tinted windows. *Id.* ¶¶ 5, 8. A police database officers routinely rely upon to check for outstanding warrants, suspect alerts, or other medical or investigative alerts revealed that the suspected driver of the vehicle, Terrance R. Woods, had a "suspect alert" for the October 2016 burglary, which had been on the system since March 2018. *See id.* ¶¶ 10–11; *see also* ECF No. 30-2 (copy of the suspect alert); Exhibit A to ECF No. 29 (body-cam video of the incident, which is available in hard copy). Ziarnik spoke with the driver of the vehicle, who confirmed that he was Terrance R. Woods. ECF No. 31 ¶ 9; Ex. A at 0:00:40–0:00:50. Based on the suspect alert, the officers arrested Woods and took

him to jail for booking. ECF No. 31 ¶ 12. While in the squad car, the officers told Woods that he had a "warrant" for a 2016 burglary, which meant that one of their fellow officers investigated the burglary and determined that Woods was a suspect. *See* Ex. A at 0:03:43–0:06:56. However, Ziarnik and Garcia didn't know any other details about the burglary investigation. *See id.*

Ziarnik prepared a report describing the above events and presented it to a court commissioner on November 9, 2018. ECF No. 31 ¶¶ 14–15; *see also* ECF No. 30-1. The court commissioner determined that the report established probable cause to believe that Woods had committed burglary and imposed a $1000 cash bail. *See id.* Woods posted bail and was released from custody that same day. *See* ECF No. 33 ¶ 7; *see also* ECF No. 35-1. The bail statement instructed Woods to appear for his next court date on November 13, 2018. *See id.* Woods retained a lawyer, and both showed up for court on November 13. ECF No. 33 ¶¶ 8–9. At the hearing, however, the Milwaukee County District Attorney's Office indicated that they did not have a file for Woods. *Id.* ¶ 9. Unbeknownst to Woods, the DA's Office had reviewed the case and decided not to issue criminal charges against him. ECF No. 34 ¶ 16.

In May 2020, Woods sued the City of Milwaukee, Ziarnik, and Garcia in state court, alleging that the November 2018 arrest was racially motivated and violated his constitutional rights. *See* ECF No. 1-2.[1] Woods alleges that, at the time of his arrest, he was showing a potential investor various properties in Milwaukee as part of his job as a property manager for large housing developer. *See* ECF No. 33 ¶ 1. He admits he had tinted windows but claims they were within legal limits. *Id.* ¶ 2. According to Woods, Ziarnik and Garcia falsely told him

---

[1] The complaint also names Anthem Blue Cross Blue Shield as an involuntary plaintiff because the insurance company paid a portion of the medical bills Woods allegedly incurred as a result of the defendants' actions. *See* ECF No. 1-2 at 6.

3

he had a "warrant" out for his arrest, but they refused to provide any information about what the warrant was for. *Id.* ¶¶ 4–5.

Woods further alleges that no one with the City interviewed him while he was in custody or explained to him why he was arrested. *Id.* ¶ 6. It wasn't until months later—around May 2019 when he spoke with the police's internal affairs division—that he learned Ziarnik and Garcia arrested him because in October 2016 the police found his fingerprints on a television set inside a burglarized residence. *Id.* ¶ 11. Woods has an explanation for why his fingerprints were found on Washington's television: while working as a property manager around December 2015, he helped Washington hang her living room television on the wall. *Id.* ¶ 12. However, according to Woods, no one—not Ziarnik, not Garcia, nor anyone else with the City—asked about the fingerprints before or after his arrest. *Id.* ¶¶ 6, 12, 14. Woods claims he has suffered from emotional distress, anxiety, problems sleeping, and gastrointestinal issues as a result of this incident. *Id.* ¶ 15.

The defendants removed the matter to federal court, *see* ECF No. 1, and the clerk of court randomly assigned it to me. On November 4, 2021, the defendants filed a motion for summary judgment. *See* ECF Nos. 26, 27. Woods filed a response to the motion, ECF No. 32, and the defendants filed a reply, ECF No. 36. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 9.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4

(1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

It appears that Woods attempts to assert three claims in his complaint. First, Woods claims that Ziarnik and Garcia violated his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures when they arrested him on November 7, 2018.

5

Second, Woods claims that Ziarnik and Garcia discriminated against him on the basis of his race. Third, Woods claims that the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for violating his constitutional rights. The defendants seek summary judgment on all three claims.

**I.     Ziarnik And Garcia Are Entitled To Summary Judgment On Woods' False-Arrest Claim**

"Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). Ziarnik and Garcia concede they were acting under color of state law at the time of Woods' arrest. However, the officers argue that they did not violate Woods' constitutional rights because they had probable cause to arrest him. The officers further argue that they are entitled to qualified immunity even if they lacked probable cause.

**A.     Probable cause**

Woods brings claims against Ziarnik and Garcia for arresting him in violation of the Fourth and Fourteenth Amendments to the United States Constitution. "Because the Fourth Amendment's requirements are more specific, 'a seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause viewed as an independent source of constitutional norms.'" *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001) (quoting *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)). "Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907–08 (7th Cir. 2018) (quoting *Stokes v. Bd. of Educ. of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). "This is so even where the defendant officers allegedly acted upon a malicious motive (such as the racism that

6

[Woods] suggests motivated the defendants here)." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)).

"Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa*, 442 F.3d at 547 (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). "The court evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Id.* "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime." *Kelley*, 149 F.3d at 646. "If so, the arrest is lawful even if the belief would have been mistaken." *Id.* (quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057–58 (7th Cir. 1992)). "Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)).

The undisputed facts demonstrate that Ziarnik and Garcia did not personally observe Woods commit a crime on the day of his arrest. The officers claim they approached Woods' vehicle on November 8, 2018, because they believed it had excessively tinted windows, but they did not investigate that alleged offense. Instead, the officers ran Woods' name through a police database to check for outstanding warrants, confirmed Woods' identity, ordered Woods out of the vehicle, and arrested Woods because the record check revealed that he had a

7

"suspect alert" for a burglary committed in October 2016. According to the officers, the suspect alert independently provided probable cause to arrest Woods.

A police officer may lawfully arrest someone for criminal conduct that he did not witness. For example, an officer who has a valid arrest warrant may arrest the person listed on the warrant even if he doesn't know the information underlying the probable-cause determination. *See Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) ("The existence of an outstanding warrant supports probable cause for an arrest.") (citing *United States v. Thornton*, 463 F.3d 693, 698 (7th Cir. 2006); *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992)); *see also State v. Ott*, No. 2014AP2099-CR, 2015 Wisc. App. LEXIS 591, at *5–8 (Wis. Ct. App. Aug. 5, 2015) (finding that police officer validly arrested the defendant based on information known collectively by the police department). Thus, "a person arrested pursuant to a facially valid warrant [generally] cannot prevail in a § 1983 suit for false arrest; this is so even if the arrest warrant is later determined to have an inadequate factual foundation." *Williamson v. Curran*, 714 F.3d 432, 443–44 (7th Cir. 2013) (quoting *Juriss*, 957 F.2d at 350–51). The arrest may be invalid, however, if the arresting officer knew that the warrant was not supported by probable cause. *See id.* An officer also may arrest a suspect based on information provided by others, like a victim, an eyewitness, or fellow law enforcement personnel. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (citing *Pasiewicz*, 270 F.3d at 524; *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986)). Such information, however, does not establish probable cause if the officer has "evidence that the information, or the person providing it, is not credible." *Pasiewicz*, 270 F.3d at 524 (citing *Sheik-Abdi v. McClellan*,

8

37 F.3d 1240, 1247 (7th Cir. 1994); *Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir. 1994); *Gramenos*, 797 F.2d at 439).

Woods offers two reasons why he thinks the suspect alert did not establish probable cause to arrest him. First, Woods argues that the police inadequately investigated the October 2016 burglary. According to Woods, "[t]he entirety of the defendants' investigation regarding the October 2016 burglary at Ms. Washington's home consisted of dusting for fingerprints on her television and those coming back as a match to Woods." ECF No. 32 at 5–6. He criticizes the police for issuing the suspect alert based on one fact—Woods' fingerprints being inside the victim's home—and for not investigating further. If they had, Woods says, they would have learned that he helped Washington hang the television in question back in December 2015 when he was the property manager of her residence. Second, Woods argues that the information supporting the suspect alert—fingerprints found inside the victim's home in October 2016—had grown stale by the time Ziarnik and Garcia arrested him in November 2018.

Ziarnik and Garcia had probable cause to arrest Woods for burglary based on the suspect alert. Under Wisconsin law, the police may arrest someone for burglary when they have probable cause to believe the person intentionally entered a dwelling without the consent of the person in lawful possession and with intent to steal. *See* Wis. Stat. § 943.10. Here, the burglary investigation revealed that someone had broken into Washington's residence, stolen several items, and attempted to steal her living room television. The investigation further revealed that fingerprints recovered from the television matched Woods, and Washington told police that Woods did not have consent to enter her residence or touch her property. Based on those facts, the police had probable cause to believe that Woods burglarized Washington's

9

residence. The suspect alert—which Woods does not dispute existed at the time of his arrest—simply let other officers within the police network know that one of their fellow officers believed he had probable cause to arrest Woods and requested that, if they encountered Woods, they detain him. *See Wilson v. Schwandt*, No. 20-CV-699, 2022 WL 171046, 2022 U.S. Dist. LEXIS 9178, at *5 (E.D. Wis. Jan. 19, 2022) (likening a suspect alert—or in that case, a "temporary felony warrant"—to an "all-points bulletin," or "APB").

That some time passed between the burglary investigation in October 2016 and Woods' arrest in November 2018 does not affect the probable-cause analysis. Unlike with search-warrants, "[i]t is the rare case where 'staleness' will be relevant to the legality of a warrantless arrest. When there is a reasonable belief that someone has committed a crime, time by itself does not make the existence of that fact any less probable." *United States v. Haldorson*, 941 F.3d 284, 292 & n.4 (7th Cir. 2019). However, passage of time may dissipate probable cause to arrest where "subsequent investigation turns up new facts or evidence that disprove or discredit the original information." *Id.* at 292 (citing *United States v. Watson*, 423 U.S. 411, 432 n.5 (1976) (Powell, J., concurring)).

Here, no facts suggest that during the intervening two years the police received new information calling into question Woods' involvement in the burglary. That the suspect alert was still on the police database at the time of Woods' arrest suggests the police still considered him a suspect for that crime. Moreover, contrary to Woods' suggestion, the law did not require the police to contact him (or his employer) and ask for an explanation. *See Mustafa*, 442 F.3d at 548 ("[P]olice officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established . . . . They may simply arrest the accused suspect."). And while the fact that Woods apparently helped Washington hang

10

her television could explain the presence of his fingerprints, it also shows that he had access to Washington's residence and knowledge of her possessions; that fact would not have discredited the police's original information or conclusively ruled Woods out as a suspect. In fact, despite his argument that the police should have investigated more, there's no evidence that Washington mentioned Woods helping her hanging the television or the fact that (as he says) he'd (lawfully) been in her apartment on several occasions.

The fact that Ziarnik and Garcia told Woods they had a "warrant" when really they had only a "suspect alert" has no constitutional significance. Probable cause is an absolute defense to a false-arrest claim whether the police have a warrant, a suspect alert, or no warrant at all. *See, e.g.*, *Harris v. City of Milwaukee*, No. 19-cv-441-pp, 2021 WL 4295312, 2021 U.S. Dist. LEXIS 179466, at *26 (E.D. Wis. Sept. 21, 2021) ("Whether the police came to the plaintiff's home . . . because of a temporary felony 'want' or a temporary 'warrant' or had no arrest warrant at all, if they had probable cause at the time they arrested the plaintiff, that is an absolute defense to a claim of false arrest."). And the undisputed facts demonstrate that the officers had probable cause to believe Woods was wanted for burglary.

### B. Qualified immunity

"For civil damages claims under 42 U.S.C. § 1983 for violations of constitutional rights, the doctrine of qualified immunity 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Muhammad*, 900 F.3d at 903 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* "To overcome a defendant's invocation of qualified immunity, a plaintiff must show: (1) that the official

11

Case 2:20-cv-00940-SCD   Filed 03/08/22   Page 11 of 16   Document 37

violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Muhammad*, 900 F.3d at 903 (quoting *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017)). Courts may address either element first, *Muhammad*, 900 F.3d at 903–04 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)), and "[i]f the answer to either question is no, the defendant official is entitled to qualified immunity," *Muhammad*, 900 F.3d at 904 (citing *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014)).

Ziarnik and Garcia concede that Woods had a constitutional right to be free from an arrest that lacked probable cause, and that right was clearly established at the time of Woods' arrest in November 2018. Thus, the only remaining question is whether a reasonable officer could believe that it was lawful to arrest Woods based solely on the outstanding suspect alert.

"With an unlawful arrest claim in a § 1983 action when a defense of qualified immunity has been raised, [I must] determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citing *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir. 1995)). "Courts have referred to the second inquiry as asking whether the officer had 'arguable' probable cause." *Humphrey*, 148 F.3d at 725 (citations omitted). "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" *Humphrey*, 148 F.3d at 725 (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (per curiam)). "Moreover, 'if probable cause is lacking with respect to an arrest, despite an officer's subjective belief that he had probable cause, he is entitled to

immunity as long as his subjective belief was objectively reasonable.'" *Wollin*, 192 F.3d at 623 (quoting *Edwards*, 58 F.3d at 293).

Even if the suspect alert did not independently establish probable cause to arrest Woods, the doctrine of qualified immunity would nonetheless shield Ziarnik and Garcia from liability. Woods faults the officers for not seeking out the facts of the underlying burglary investigation and for not conducting their own investigation before or after arresting him, but the law did not require them to do so. "[I]f an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence. . . . The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley*, 149 F.3d at 646–47; *see also Mustafa*, 442 F.3d at 548 ("Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect."); *Pasiewicz*, 270 F.3d at 524 ("When probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further."); *Gramenos*, 797 F.2d at 439 ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."). Woods, however, offers no reason why Ziarnik and Garcia should have questioned the probable-cause determination made by their fellow police officer. Because it was objectively reasonable for Ziarnik and Garcia to rely on the suspect alert, the officers are protected by qualified immunity.

## II. Ziarnik And Garcia Also Are Entitled To Summary Judgment On Woods' Racial-Discrimination Claim

To the extent Woods raises a racial-discrimination claim, that claim is undeveloped and unsupported. In his complaint, Woods alleges—without any factual support—that Ziarnik and Garcia discriminated against him on the basis of his race. ECF No. 1-2 at 5.

13

Ziarnik and Garcia moved for summary judgment on that claim, arguing that no evidence suggests race was a motivating factor in Woods' arrest. In his response brief, Woods (who is African America) indicates that, on the day of his arrest, he was taking a prospective investor (a middle-aged, white female) on a tour of various rental properties. ECF No. 32 at 10. Woods says, "It would be a reasonable inference to conclude that Officers Garcia and Ziarnik saw Woods with a middle-aged white female leaving one of the properties on their tour and decided to run Woods' license plate." *Id.* at 11.

No reasonable jury could return a verdict in Woods' favor on his potential racial-discrimination claim. Woods attempts to bolster this conclusory claim with argument, but he does not provide any factual support for it; none of the proposed findings of fact mention race or hint at a racial motivation for the officers' actions. Even if they had, the claim would still fail. The officers' subjective motivation "play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Simmons*, 26 F.3d at 654 ("Even malicious motives will not support a claim of false arrest if probable cause exists."). And Woods does not allege—let alone provide factual support to demonstrate that— the officers treated him differently than similarly situated individuals because of his race. *See Whren*, 517 U.S. at 813 ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.).

### III. The City Is Entitled To Summary Judgment On Woods' *Monell* Claim

Woods alleges in his complaint that the City violated his Fourteenth Amendment rights in three ways:

  a.  Encouraging, acquiescing and /or approving of the practice of using threats, intimidation and misinformation by members of its police force in effectuating an arrest.

  b.  Failing to implement adequate training and supervision of its police force in effecting an arrest.

  c.  Failing to implement adequate training and supervision of its police force in conducting an investigation prior to effectuating an arrest.

ECF No. 1-2 at 5–6. Because Ziarnik and Garcia did not violate his constitutional rights, Woods did not suffer constitutional injury. Accordingly, the City cannot be held liable under *Monell*. *See Pasiewicz*, 270 F.3d at 527 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).[2]

  Assuming for the sake of argument that the officers did commit a constitutional violation, the City still would be entitled to summary judgment. To establish liability under *Monell*, Woods must show "that a policy or widespread practice of the City caused his alleged injuries." *Shachter v. City of Chicago*, 848 F. App'x 208, 210 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 690–92). Woods does not provide any facts to support such a claim. He alleges that Ziarnik and Garcia ran his license plate "for no good reason," the officers falsely claimed they had a warrant, the officers arrested him without "any substantive investigation," and the City collected cash bail and provided a future court date without first conferring with the DA's office whether there was sufficient evidence to support the burglary charge. *See* ECF No. 32 at 12–13. However, Woods does not offer any facts from which a reasonable jury could infer

---

[2] Woods seeks only damages, not injunctive relief. *See* ECF No. 1-2 at 6–7.

that the City has a policy, pattern, or practice of such conduct; Woods' own experience is not enough to establish liability under *Monell*.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment, ECF No. 26. The clerk of court shall enter judgment that this action is dismissed and that Woods shall take nothing from the defendants by his complaint.

**SO ORDERED** this 8th day of March, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge